UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TONYA Y. METCALF,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,[1]

    Defendant.

CASE NO. 3:16-cv-05432 RSL JRC

REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT

Noting Date: May 12, 2017

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed. *See* Dkt. 13, 20.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit, pursuant to the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

After considering and reviewing the record, this Court concludes that the ALJ did not commit harmful legal error when he failed to credit fully plaintiff's allegations and testimony because the record contains both contradictory medical evidence from various doctors and statements from plaintiff herself that are inconsistent with her alleged complaints. Despite the ALJ's error in failing to specify how plaintiff's household chores are transferable to a fulltime work setting, the ALJ's other valid reasons are sufficient to support the ALJ's decision to discredit plaintiff's testimony. Additionally, the ALJ properly incorporated into his hypothetical RFC medical opinions regarding plaintiff's inability to do math, work without verbal instruction, or work in a non-repetitive environment. Therefore, his resulting Step Five analysis is supported by substantial evidence and was without harmful error.

Therefore, this Court recommends that this matter be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff, TONYA Y. METCALF, was born in 1982 and was 28 years old on the alleged date of disability onset of March 31, 2010. *See* AR. 209-15. Plaintiff has an eighth grade education and obtained her GED. AR. 35. Plaintiff has some work experience as a bell ringer, kitchen helper and customer service representative. AR. 77, 244-51.

According to the ALJ, plaintiff has at least the severe impairments of "fibromyalgia, cognitive disorder with memory and perception issues; depressive

disorder; panic disorder without agoraphobia; avoidant personality disorder; and cannabis abuse (20 CFR 416.920(c))". AR. 659.

At the time of the hearing, plaintiff was living with 4 of her 5 children and her fiancé. AR. 39-40.

PROCEDURAL HISTORY

Plaintiff's application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act was denied initially and following reconsideration. *See* AR. 96, 109. Plaintiff's first hearing resulted in an unfavorable decision by the ALJ and the Appeals Council, followed by a remand by the district court. *See* AR. 1-4, 12-30, 758-73. Plaintiff's second hearing was held before Administrative Law Judge Gene Duncan ("the ALJ") on December 15, 2015. *See* AR. 678-726. On February 11, 2016, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act. *See* AR. 653-77.

On June 24, 2014, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review. AR. 746-48. *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in June, 2016. *See* Dkt. 1, 3. Defendant filed the sealed administrative record regarding this matter ("AR.") on August 15, 2016. *See* Dkt. 8.

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether the ALJ properly found plaintiff not credible; (2) Whether the ALJ's hypothetical RFC accounts for all of plaintiff's limitations; (3) Whether the ALJ made errors of law at Step 5; and (4) Whether the ALJ errors support remand for an immediate award of benefits. *See* Dkt. 13, p. 1.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

(1)  Whether the ALJ properly found plaintiff not credible.

Plaintiff contends the ALJ erred when he failed to credit fully plaintiff's testimony regarding her impairments. *See* Dkt. 13, pp. 3-4. Plaintiff specifically argues that the ALJ committed harmful error when he failed to provide clear and convincing reasons for discounting plaintiff's testimony on the bases that it was inconsistent with: A) her medical records; B) her previous statements; and C) with her activities of daily living. *See* Dkt. 13, pp. 4-8. For the following reasons, the Court disagrees.

If an ALJ rejects the testimony of a claimant once an underlying impairment has been established, the ALJ must support the rejection "by offering specific, clear and

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 4

convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)); *see also Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014).

A) Medical Records

Plaintiff contends the ALJ committed harmful error by discounting plaintiff's testimony on the grounds that it was inconsistent with objective medical evidence. *See* Dkt. 15, pp.4-6. Plaintiff argues that the ALJ failed to properly identify plaintiff's primary impairment and thus failed to cite evidence addressing inconsistencies with that specific impairment. *Id*. Plaintiff states, "If the ALJ was questioning the credibility of the claimant through the impairment of depression, [m]arkers [of euthymic effect, good grooming and hygiene, and notably happy mood] could be helpful. However, [plaintiff]'s major problems are in cognition; not her hygiene, effect, and overall mood." *Id*. (referencing AR. 665).

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and analyzing a claimant's testimony regarding limitations lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (citing *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (citing 42 U.S.C. § 423(d)(5)(A) (other citations and footnote omitted)). The ALJ may "draw inferences logically flowing from the evidence." *Sample, supra*,

694 F.2d at 642 (citing *Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)). However, an ALJ may not speculate. *See* SSR 86-8, 1986 SSR LEXIS 15 at *22.

Here, the ALJ found that plaintiff's medical records did not support the degree of limitation she alleges. AR. 665. In doing so, the ALJ provided clear and convincing reasons for discounting plaintiff's testimony and properly addressed inconsistencies with plaintiff's specific impairments—fibromyalgia, cognitive disorder with memory and perception issues, depressive disorder, panic disorder without agoraphobia, avoidant personality disorder, and cannabis abuse. AR. 659 (citing 20 CFR 416.920(c)), 665-66.

First, the ALJ cited numerous records containing inconsistencies relative to plaintiff's depressive and avoidance disorder. AR. 664 (citing AR. 458, 530-33, 586). The ALJ identified various inconsistencies relative to plaintiff's impairment of depression and avoidant personality disorder including records demonstrating plaintiff maintained a stable mood, good grooming, good hygiene, was happy with broad affect, polite, maintained good eye contact, a sense of humor, and provided thoughtful answers. *Id*. Plaintiff correctly states in her brief that in questioning plaintiff's credibility through the impairment of depression, these inconsistencies identified by the ALJ are helpful. The Court concludes these inconsistencies are not only helpful but specific, clear and convincing reasons to discount plaintiff's testimony regarding her depressive and avoidance disorder.

Plaintiff contends however that in spite of these inconsistencies, the ALJ erred in failing to address plaintiff's cognition. However, plaintiff failed to recognize the

additional examples provided by the ALJ relative to plaintiff's other specific impairments including cognition. For example, the ALJ identified medical records showing that plaintiff repeatedly demonstrated intact "insight and judgment" (AR. 665 (citing AR. 327, 458, 586)), was "logical and goal-oriented," and possessed intact short-term and long-term memory (AR. 665 (citing AR. 530-534)). The ALJ further identified medical recording indicating that although plaintiff alleged problems with memory, such allegations were not observed by medical professionals. AR. 665 (citing AR. 340).

The Court further notes that the ALJ cited medical records contrary to plaintiff's claims of limitations related to her fibromyalgia demonstrating plaintiff's normal findings during physical evaluations. AR. 665-66. For example, the ALJ relied upon various records demonstrating that plaintiff maintained normal ranges of motion in her spine and joints, normal gait and hand coordination, normal shoulders, elbows, legs, arms, hips, and knees, and intact motor strength including sensation. AR. 665 (citing AR. 395-96); AR. 666 (citing AR. 525); AR. 666 (citing AR. 525). He further identified records indicating that plaintiff's "fibromyalgia did not impose any limitations." AR. 666 (citing AR. 525).

Based on the record as a whole, the Court concludes that the ALJ provided clear and convincing reasons for his failure to credit fully the plaintiff's testimony regarding her limitations based on inconsistencies contained in plaintiff's medical records.

B) Plaintiff's Contradictory Statements

Plaintiff contends the ALJ erred in discounting plaintiff's testimony based on plaintiff's contradictory statements. *See* Dkt. 13, p. 8. Without much elaboration plaintiff argues that the ALJ improperly used plaintiff's contradictory statements regarding her

depression to discount her other testimony. Plaintiff further states that in doing so, the ALJ failed to specifically address how these contradictory statements impact plaintiff's allegations regarding her cognitive impairment. *Id*. The Court disagrees.

The Ninth Circuit has indicated that an ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony regarding symptoms, and may also consider a claimant's daily activities. *Smolen, supra*, 80 F.3d at 1284 (citing *Fair v. Bowen*, 885 F.2d 597, 602-04 (9th Cir. 1989)). Additionally, an ALJ may discredit a plaintiff's testimony when it contradicts evidence in the medical record. *See Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir. 1995). In *Johnson*, the Ninth Circuit reasoned as follows:

> The ALJ also identified several contradictions between claimant's testimony and the relevant medical evidence and cited several instances of contradictions within the claimant's own testimony. We will not reverse credibility determinations of an ALJ based on contradictory or ambiguous evidence.

(*Internal citation to Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir. 1984)).

Here, the ALJ properly discounted plaintiff's testimony based on her contradictory statements. For example, the ALJ cited medical records in which various medical providers noted that plaintiff denied problems with depression or personality disorder (AR. 666 (citing AR. 530-534)), reported her depression was well-controlled (AR. 666 (citing AR. 1161)), and reported her memory was intact (AR. 666 (citing AR. 983)). The ALJ further cited medical records evidencing that plaintiff alternatively magnified her illness (AR. 665 (citing AR. 317)) and exaggerated her sleep disturbance (AR. 666 (citing AR. 326)). These medical records contain inconsistencies with plaintiff's testimony

regarding her impairments. Therefore, the ALJ properly relied on these inconsistencies in support of his decision to discount plaintiff's testimony.

C) Activities of Daily Living

Plaintiff contends that the ALJ failed to properly support his decision to discount plaintiff's testimony based on plaintiff's activities of daily living. *See* Dkt. 13, pp. 6-8. Specifically, plaintiff argues that plaintiff's ability to care for her children and complete daily household chores does not demonstrate plaintiff has transferable work skills. *Id*. The Court agrees but finds the error harmless.

As stated by the Ninth Circuit, the ALJ "must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse determination regarding if a claimant's statements should be credited. *Orn, supra*, 495 F.3d at 639 (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)). The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication. *Smolen v. Chater*, 80 F.3d 1273, 1287 n.7 (9th Cir. 1996).

Here, the ALJ found that plaintiff's "activity level was inconsistent with her allegations of disability." AR. 666. In reaching his conclusion, the ALJ cited plaintiff's ability to care for her children and pets, watch television, clean and cook. *Id*. (citing AR. 530-34). The ALJ ultimately concluded that these activities "indicate[d] a physical and mental capacity greater than alleged." AR. 666.

The Court concludes that the ALJ erred when he failed to make findings relating to the transferability of plaintiff's daily activities. Based on the ALJ's findings it is unclear if or how plaintiff's ability to care for her children and pets and sporadically complete daily house chores translates into her ability to work in a fulltime work environment. Thus, the ALJ erred in this regard. However, the Court further concludes that this error is harmless for the reasons stated below.

The Ninth Circuit provides that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. July 10, 2015) (citing *Stout,* 454 F.3d at 1055-56). The Ninth Circuit further notes that "several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006)).

The Court concludes that the ALJ's error relative to plaintiff's activities of daily living is harmless in light of the ALJ's other valid reasons for discounting plaintiff's testimony. As discussed above, the ALJ properly discredited plaintiff with other specific, clear and convincing reasons including inconsistencies contained in plaintiff's medical

records and contradictory statements from plaintiff. *See supra*, Sections A-B. Therefore, the ALJ's error is harmless.

>  (2) Whether the ALJ made errors in failing to account for all of plaintiff's limitations in the hypothetical RFC or at Step Five.

Plaintiff contends the ALJ erred when he failed to account for several of plaintiff's limitations provided by the medical expert. *See* Dkt. 13, pp. 10-11. Specifically, plaintiff argues that despite affording "great weight" to Dr. Layton's opinion, the ALJ ignored specific findings such a plaintiff's inability to do math, work without verbal instruction, or work in a non-repetitive environment. *Id*. Plaintiff further argues that the ALJ erred in his assessment of plaintiff's residual functional capacity ("RFC") and therefore, at Step Five which is dependent on the RFC and vocational factors. *See* Dkt. 13, pp. 10-13. Defendant contends there is no conflict to resolve because the ALJ already incorporated the doctor's assessed limitations in the RFC finding and properly accounted for testimony from plaintiff's doctor and the vocational expert in determining other work exists in significant numbers that plaintiff can perform given her limitations. *See* Dkt. 20, p. 7. The Court agrees with defendant.

In assessing the RFC, an ALJ must consider all medical evidence provided. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir 1998). However, so long as the RFC is consistent with limitations set forth by a claimant's doctor, the ALJ's findings need not be identical to the medical providers' opinion. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). If the ALJ reaches the final step in the sequential analysis, the burden shifts to the Commissioner to prove that the claimant can perform

other work in the national economy, given her age, education, residual functional capacity ("RFC") and past work experience. *See* 20 C.F.R. §§ 404.1520(g), 404.1594(f)(8), 416.994(b)(5)(vii). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's functional limitations "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted).

Here, after considering the entire record and affording "great weight" to Dr. Layton's opinions regarding plaintiff's limitations, the ALJ found that plaintiff had the RFC to "perform light work… with objects rather than people." AR. 664. The ALJ further restricted plaintiff to understanding and remembering simple verbal instructions, performing one to three step tasks, receiving hands on instructions to changes in her work setting, and limited plaintiff to work where she was not making executive decisions. *Id*. The ALJ also relied on the vocational expert's testimony and determined that plaintiff could perform jobs including laundry folder, marker, and wire worker. AR. 671.

The Court concludes that the ALJ did not err in determining the RFC because he considered all evidence provided and properly incorporated Dr. Layton's findings in the RFC. While the ALJ did not explicitly cite Dr. Layton's specific findings regarding plaintiff's inability to do math, work without verbal instruction, or inability to work in a non-repetitive environment, the ALJ's RFC determination is consistent with these limitations. For example, the jobs identified by the ALJ are all listed as requiring the lowest level of math. AR. 671-72; *see also* DOT 361.687-013, 018, and 022.

Additionally, the ALJ relied on Dr. Layton's opinions when he limited plaintiff to "verbal instructions," "one to three step tasks," and "verbal and hands on instruction in changes in her work setting as she learns best by demonstration with verbal instructions." AR. 664. Based on these reasons, the Court finds the ALJ properly resolved the medical evidence and accounted for plaintiff's limitations in the RFC. The Court further finds the ALJ properly accounted for these medical limitations at Step Five and in his consideration of the corresponding vocational expert testimony.

## CONCLUSION

Based on the stated reasons and the relevant record, the Court recommends that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **May 12, 2017**, as noted in the caption.

Dated this 14th day of April, 2017.

J. Richard Creatura
United States Magistrate Judge